## The Organized Labor Hall

*v.*

## William Gebert et al.

1. Where money has been given, or goods, for the purpose of being converted into money, by a community at large to different unincorporated associations of individuals for the purpose of purchasing land and erecting a hall thereon for the common benefit of such association, which moneys are placed in the hands of certain members of said association for that purpose, who purchased land with buildings thereon, taking the title in trust for such associations, after which all of said associations become incorporated according to law for the purpose of more effectually protecting and carrying out the purposes and interests of such association, such corporation has the right to demand and receive from the persons so holding the title a conveyance thereof to it without any formal request from the different associations.

2. By no other method could the individual rights of the individual members of said association be fixed and secured.

3. Such corporation, and not the different assemblies, has the right to take such title, and through it alone can the moneys so given and the title so acquired be managed for the benefit of all individuals who are or may become members of such association.

---

*Mr. Edwin Robert Walker* and *Mr. Garret D. W. Vroom*, for the complainant.

*Messrs. Howell & Brother*, for the defendants.

Bird, V. C.

There are some novel features in this case which at first view render a proper disposition thereof somewhat difficult, and yet I think an entirely satisfactory solution is possible.

The bill is filed not so much to establish a trust as to give proper direction and effect to certain funds and real estate which are admitted to be held in trust. In the year 1884 there were twelve associations in the county of Mercer called local assemblies of the Knights of Labor, each of which was designated by certain numerals. The membership of each varied in numbers,

but in all exceeding eleven hundred. These were mere volun-
tary associations, like partnerships, without chartered privileges,
or any similar characteristics in the nature of a corporation, such
as the right to receive, hold and transfer real and personal prop-
erty by any designated name or title. In the year named they
resolved to hold what was called a bazaar; for the purpose of pur-
chasing or building a public hall for the free use of workingmen
and women in that vicinity. For that purpose they published
and spread widecast, circulars in which, amongst other things,
they solicited useful articles from all persons interested to be
offered for sale at the bazaar. Such bazaar was held in the
month of December, 1885. After the bazaar a picnic was held
for the same purpose. The proceeds of the two entertainments
were $10,794.37.

Soon after these moneys were raised such proceedings were
taken by the different local assemblies that a committee was ap-
pointed with authority to invest the said moneys in the purchase
of premises for the said assemblies. This committee purchased a
lot of land with the buildings thereon in the city of Trenton,
taking the title thereto in their own name but in trust for the
said Knights of Labor. The title to these premises they still
hold, and they have received the rents and profits thereof.

In the year 1889 a law was passed which permitted these
Knights of Labor and similar organizations of labor to become
organized and to form a body corporate. By virtue of this
authority the Knights of Labor referred to organized and be-
came incorporated by the name of "The Organized Labor Hall."
As such incorporation it files its bill against the said committee
or trustees, asking that they be required to convey the title to the
said lands and premises to it and to account for the rents and
profits.

The defendants have answered. One of the objections to the
demand of the complainant is expressed in these words in the
brief of counsel : "Because the trust was created and imposed
upon these defendants by the local assemblies. * * * and
these defendants can only be discharged from their trust by those
who imposed it upon them;" adding that they have received no

notice or request from a majority of the assemblies to make any transfer of the property which they hold. In the first place, I think the testimony shows that a majority of the assemblies passed resolutions requesting the defendants to transfer all the property held by them to the complainant, and in a formal manner notified the defendants of such resolution. If there be a doubt whether the defendants had formal notice or not, then, in the second place, it is established beyond question that a majority of the assemblies passed such resolutions. If any request or resolution was necessary from the different assemblies for the protection of the defendants in making the transfer they undoubtedly had such protection in this case, when a majority of the local assemblies had resolved as indicated.

But since all of the assemblies did not and have not requested the defendants to make such transfer, it seems to me there is a safer criterion for the court to observe. There is no doubt whatever with respect to the organization of the corporation by all of these assemblies. This being established, I cannot conceive of the slightest room for doubting that all the rights, powers, privileges or interests of the different assemblies, to the extent that it was possible for them to enjoy any such rights, powers, privileges or interests in common as such different assemblies, became absolutely merged and vested in such corporation, and could only be exercised, managed, controlled or disposed of by such corporation. In all such matters the corporation only could speak and act for the different assemblies; in other words, the different assemblies were powerless except through the corporation. They could no more control the affairs of this institution than could the promoters of a bank or of a railroad corporation, after their organization as such corporations, independent of the corporation itself acting by its directors, such promoters becoming stockholders. Hence, when this organization was completed, it had a right in the exercise of the powers and privileges conferred upon it by the different promoters thereof—that is, the local assemblies—to demand and to receive from the defendants a transfer of the title to the property in question. It was enough for the defendants to know that the single object had in

view in raising and collecting these funds was the erection of a hall, and that the organization of this corporation was part and parcel of that scheme, with all the details of which the defendants, as members of the various assemblies, had practically an intimate acquaintance.

Indeed, it seems to me quite impossible that any other view of this case can be successfully maintained. Was it possible, after the organization of this corporation with all the powers and privileges usually conferred upon such bodies, for the promoters (that is, the different assemblies), either by their action or inaction, to prevent such corporations from controlling the property and interests, the control and management of which was the chief design in creating the corporation? In other words, could these promoters, by separate resolutions, successfully interdict the payment of the money or the transfer of the title to the land held by the defendants to the corporation? In my judgment, these things could not be done any more than promoters of any other corporation, after its organization, could by their individual action control the moneys which had been contributed to a common fund.

This view of the case, I think, is strengthened when we consider another objection raised by the defendants. The local assemblies, which it is claimed did not make a formal request of the defendants to transfer the property to the complainant, were not made parties to the bill, and the claim is that they are necessary parties. If I am right in what I have already said, it is very clear that this question has already been disposed of, but the thought referred to, which I think strengthens the former view, lies in the fact that the fund which was used for the purchase of this property was not given by the different assemblies, but by a very large number of individual citizens, many of whom were in no way connected with the assemblies, and that being so given it is a unit and can only be controlled as such. Its indivisibility has an important bearing upon the rights of the parties, and must necessarily have great influence in controlling the judgment of the court. It is precisely as though an individual had bequeathed this sum of money to these local assemblies,

as a body, for the erection of a hall, and, in order to give efficient direction and practical and permanent success to the scheme, such corporation had been formed under the law as has been formed in this case. In such case, the rights and interests in the fund of the different assemblies would be swallowed up in the organization. The organization would take their several places, would represent it, and they could only speak and act through it. Whatever claims or demands they might have been permitted to make with respect to such fund, acting by a majority of the different assemblies, the organization alone could make. It would be manifestly very absurd to insist that a like power existed in the corporation and in the different assemblies; and still more absurd to suppose that such a corporation could be created for a particular purpose under the law, and after it was so created, the different promoters thereof could, by their individual action, defeat such object. But, again, it will be perceived that this objection as to parties can only be supported upon the theory that the different assemblies, or the individual members thereof, are each *cestuis que trust.* This was undoubtedly correct until the completion of the organization of the corporation, but when the corporation was formed then it represented the interests of the different *cestuis que trust* as to this fund. As intimated, they surrendered all their rights of whatever nature to it, and through it the action of the different assemblies must be, as it should be, a unit.

Clearly none of the different assemblies, nor any given number of them less than the whole, has any right to a parcel of their fund or to control it. It is not a bequest or a charity given for the purpose of distribution amongst individuals or corporations; as intimated, the fund is a unit and must be controlled as such. A further support to these views is found in the principle, that members of a corporation are forbidden to seek the protection of their rights or the promotion of their interest, except through the corporation itself, unless the corporation refuses to do its duty in the premises. And, in such case, each individual member in his own behalf, and in behalf of all other members, could take proceedings, in case the corporation refused to protect his and

their interests against the peril which would threaten such interests from any loose and uncertain holding of them similar to the manner in which the title to the property in question is now held.

Another objection which seems to merit attention is, that the complainant did not become organized by such corporate title as to indicate that it was a corporation for all the Knights of Labor of Mercer county. The rights of different assemblies of Knights of Labor, or of individual members of those assemblies, are not to be settled and fixed by the name of the corporation. Such rights can only be determined upon an application to admission to membership, in order to enjoy the privileges or benefits of the organization. And it should not be forgotten that the question in dispute is not so much the legality of this organization which now claims this fund to this property, nor who are entitled as members to share in its privileges, as it is whether or not such organization is entitled to this fund and this property from these committeemen or trustees. If the corporation was legally formed by the twelve local assemblies (of which, I think, there can be no doubt), the right of membership may be determined by such corporation, and if, in the determination of such a question, it errs, the courts will be open to correct such error.

In my judgment, the defendants should be directed to transfer the title to the property referred to, to the complainant, and should account for any of the principal moneys in hand and for the rents and profits, less all proper costs and charges.

I think the costs of both parties should be paid out of the fund in hand, whether principal or interest. This is so as to the complainant, because it has prevailed, and as to the defendants because being trustees, and there being serious questions involved, they were entitled to the protection of a decree of the court after making only a reasonable defence.